UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SHERVON FLORES, ELIO GUZMAN,
ELLEN LAMB, OWEN LAMB,
THOMAS LAMB, JOSE PEREZ,
TENKU RUFF, and GEORGE WOLFF,
on behalf of themselves and all
others similarly situated,

                  Plaintiffs,

   -against-

EQUIFAX INC.,

                  Defendant.
-----------------------------------------------------------------X

Case No. 1:17-cv-07088

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Shervon Flores, Elio Guzman, Ellen Lamb, Owen Lamb, Thomas Lamb, Jose Perez, Tenku Ruff, and George Wolff ("Plaintiffs"), by their attorneys, Trief & Olk, allege, upon personal knowledge as to their own actions and upon information and belief derived from, among other things, investigations of counsel and review of public documents as to all other matters, as follows:

## SUMMARY OF THE ACTION

1. Plaintiffs bring this this action on behalf of a nationwide class of persons whose personally identifiable information ("PII") was obtained by defendant Equifax, Inc. ("Equifax") but disclosed as a result of what Equifax calls a "cybersecurity incident" that it currently claims occurred from mid-May through July 2017 (the "data breach").

2. According to Equifax, the data breach involved the release of PII and the breach potentially impacted approximately 143 million United States consumers.

3. According to Equifax, the data breach occurred as a result of criminals who "exploited a U.S. website application vulnerability to gain access to certain files."

4. On September 13, 2017, Equifax identified the vulnerability as a flaw in the open-source Apache Struts framework it used to build its web applications.

5. The flaw in the open-source Apache Struts framework however was fixed in March 2017 with patches available to all users of Struts.

6. Despite the available patches, Equifax did not implement them to eliminate the vulnerability.

7. The release of data that occurred from the data breach was unauthorized by Equifax.

8. Equifax did not receive consent from Plaintiffs and the other members of the putative class to release the PII.

9. The PII that was released as a result of the data breach included names, Social Security numbers, birth dates, addresses, driver's license numbers, credit card numbers, and certain dispute documents containing PII.

10. According to Equifax, the data breach occurred from mid-May through July 2017, yet Equifax claims that it did not learn of it until July 29, 2017.

11. Equifax has admitted that it learned about the data breach on July 29, 2017, yet it did not disclose the data breach until September 7, 2017.

12. As a result of Equifax's admitted failure to learn of the data breach until July 29, 2017, and its failure to disclose it until September 7, 2017, Plaintiffs and the other members of the putative class were unable to take any action to take any action to mitigate the damages caused by the data breach for several months after the data breach occurred.

13. The injuries to Plaintiffs and the other members of the putative class were proximately caused by Equifax's failure to implement or maintain adequate and reasonable data security measures despite the devastating and foreseeable effect release of PII would have on them.

14. This action is brought to obtain compensation for the harms caused by Equifax's data breach and to obtain additional relief, including injunctive relief, to require prospective protection for PII of Plaintiffs and the other members of the putative class.

## JURISDICTION AND VENUE

15. The Court has jurisdiction over this action pursuant to the provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy, exclusive of interest and costs, is greater than $5 million. At least one member of the class has a different citizenship from that of Equifax, including but not limited to Plaintiffs, and there are more than 100 putative class members.

16. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c), as the Plaintiffs reside within the District, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Equifax regularly conducts business in this District.

## PARTIES

17. Plaintiff Shervon Flores is a citizen of the State of New York who resides in Bronx, New York. Plaintiff Flores has confirmed with Equifax that her PII was released as part of the data breach.

18. Plaintiff Elio Guzman is a citizen of the State of New York who resides in Bronx, New York. Plaintiff Guzman has confirmed with Equifax that his PII was released as part of the

data breach. He was also a customer of Equifax, having entered into an agreement with Equifax wherein he provided them his PII and they agreed to securely maintain it.

19. Plaintiff Ellen Lamb is a citizen of the State of New York who resides in Flushing, New York. Plaintiff Lamb has confirmed with Equifax that her PII was released as part of the data breach.

20. Plaintiff Owen Lamb is a citizen of the State of New York who resides in Flushing, New York. Plaintiff Lamb has confirmed with Equifax that his PII was released as part of the data breach.

21. Plaintiff Thomas Lamb is a citizen of the State of New York who resides in Flushing, New York. Plaintiff Lamb has confirmed with Equifax that his PII was released as part of the data breach.

22. Plaintiff Jose Perez is a citizen of the State of New York who resides in Bay Shore, New York. Plaintiff Perez has confirmed with Equifax that his PII was released as part of the data breach.

23. Plaintiff Tenku Ruff is a citizen of the State of New York who resides in Chappaqua, New York. Plaintiff Ruff has confirmed with Equifax that her PII was released as part of the data breach.

24. Plaintiff George Wolff is a citizen of the State of New York who resides in Chappaqua, New York. Plaintiff Wolff has confirmed with Equifax that his PII was released as part of the data breach.

25. Defendant Equifax is a corporation organized and existing pursuant to the laws of the State of Georgia with its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia.

## CLASS ALLEGATIONS

26. This action is brought by Plaintiffs pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following class of consumers (the "National Class"): "All persons residing in the United States whose PII was obtained from Equifax pursuant to the data breach."

27. The action is also brought by Plaintiffs pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following class of consumers (the "New York Sub-Class"): "All persons who reside in the State of New York or who resided in New York at the time of the data breach whose PII was obtained from Equifax pursuant to the data breach."

28. Plaintiffs are members of both the National Class and the New York Sub-Class.

29. The National Class and the New York Sub-Class are collectively referred to as the "Class."

30. The Class does not include Equifax, its affiliates, parents or subsidiaries or employees, governmental entities, and any judge to whom this case is assigned.

31. Joinder of all members of the Class is impractical because of the estimated 143 million individuals whose PII was taken as a result of the data breach.

32. This action involves common questions of law and fact that predominate over questions affecting Plaintiffs and the individual members of the Class, including:

    a. whether Equifax had a duty to prevent the release of Plaintiffs' and the Class' PII and, if so, whether it breached that duty;

    b. whether Equifax knew or should have known of the website application vulnerability before the data breach;

c. whether Equifax took proper and reasonable precautions to prevent the data breach;

d. whether Equifax took proper and reasonable precautions to be able to detect a breach of its systems designed to safeguard against the unauthorized release of PII;

e. whether the data breach was caused in whole or part by the negligence of Equifax;

f. whether Equifax acted willfully and with reckless disregard of the possibility or likelihood that the data breach would occur;

g. whether Equifax acted reasonably in delaying disclosure of the data breach;

h. whether Equifax's actions and failures to act were the proximate cause of the data breach and of Plaintiffs' and the Class' damages;

i. whether Equifax violated New York General Business Law §§ 349 and 350 and thereby harmed Plaintiffs and the New York Sub-Class;

j. the amount of damages suffered by Plaintiffs and the Class; and

k. whether Plaintiffs and the Class are entitled to an injunction to prevent further unauthorized disclosure of their PII.

33. The claims of Plaintiffs are typical of those of members of the Class, and Plaintiffs have no interests that are antagonistic to those of the Class nor does Equifax have defenses to Plaintiffs' claims that are unique to them.

34. Plaintiffs will fairly and adequately pursue the interests of the Class and protect those interests. Plaintiffs have no conflicts with the interests of the Class.

35. Plaintiffs have retained counsel who are experienced in complex class actions.

36. A class action is superior to all other means available to adjudicate the issues involved in this action for reasons including that:

    a. individual litigation of the claims at issue here would not be economically feasible for Plaintiffs and the Class because of the cost of litigation in comparison to the damages suffered;

    b. individual litigation could potentially produce judgments that are inconsistent or contradictory;

    c. needless delay and unnecessary expense would be avoided; and

    d. the court can more readily manage a class action rather than the flood of individual litigation that would otherwise ensue.

37. Class certification is proper pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2) because:

    a. of the risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Equifax if individual Class members prosecuted separate actions;

    b. of the risk that adjudications by individual Class members would, as a practical matter, be dispositive of the interests of other Class members who were not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and

    c. Equifax has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is proper and appropriate regarding the Class as a whole including, but not limited to, by failing to protect

against the misuse of the PII that was the subject of the data breach and by ensuring that other unauthorized disclosure of PII does not occur in the future.

38. The members of the Class are readily ascertainable from the records of Equifax, which has utilized a website that, by providing a last name and partial social security number, informs the consumer whether his or her PII has been compromised. Thus, the identity of Class members can be ascertained and notice to the Class can therefore be accomplished.

## STATEMENT OF FACTS

39. Equifax is one of three principal nationwide credit-reporting companies that, according to its 2016 annual report at 12, businesses rely upon for "consumer and business credit intelligence, credit portfolio management, fraud detection, decisioning technology, marketing tools, debt management and human resources-related services" and individual consumers purchase "a portfolio of products that enable individual consumers to manager their financial affairs and protect their identity."

40. Equifax admits in its company profile on its website that it "organizes, assimilates and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide, and its database includes employee data contributed from more than 7,100 employers."

41. According to one commentator, Equifax's "culling and dissemination of financial data is what allows—or prevents—people from being able to buy or rent houses, get auto loans, have credit cards, and a host of other everyday necessities."[1]

42. According to the 2016 annual report at 10, Equifax's operating revenue in 2016 exceeded $3.1 billion.

---

[1] Gillian B. White, The Atlantic, Sept. 7, 2017, "A Cybersecurity Breach at Equifax Left Pretty Much Everyone's Financial Data Vulnerable."

43. Equifax receives its data from sources including banks, credit card companies, lenders, and retailers, and Plaintiffs and other Class members may never have asked Equifax to have their information collected by Equifax.

44. As a result of its collection methods, consumers may be unaware that Equifax maintains PII regarding them.

45. In addition, Equifax may collect information directly from consumers, including according to its website, the consumer's "name, Social Security number, current and previous addresses, date of birth, and telephone number" and the following additional documentation:

> Valid driver's license
> Social Security card
> Pay stub
> W-2 form
> 1099 form
> Court documents for legal name change
> Birth certificate
> Passport
> Marriage certificate
> Divorce decree
> State ID
> Military ID
> Utility bill with the correct address (gas, water, cable, residential phone bill)
> Cell phone bill
> Rental lease agreement/house deed
> Mortgage statement
> Bank statement

46. Equifax has previously demonstrated its knowledge of the importance of not disclosing PII and acknowledged certain of the harm resulting from its release. In its website information sheet "What is Identity Theft?" Equifax stated:

> Identity theft is committed when someone steals your personal information – such as your name, Social Security number, and date of birth – typically to hijack your credit and use it to open up new credit accounts, take out loans in your name, or access your bank or retirement accounts. An identity thief can even use your personal information to steal your tax refunds, seek medical services, or commit crimes in your name.

9

Once an identity thief has access to your personal information, he or she can also:

- Open new credit card accounts with your name, Social Security number and date of birth. When the thief charges to the credit cards and leaves the bills unpaid, the delinquency will be reported to your credit report and could impact your credit score;
- Open a bank account in your name and write bad checks on the account;
- Create counterfeit checks or debit cards and use them to drain your existing bank accounts;
- File for bankruptcy under your name to avoid paying debts;
- Set up a phone, wireless, or other utility service in your name.

47. Equifax knew of the need to secure PII and of the threat to the PII it maintained by hackers particularly because (a) it previously had W-2 data stolen from its website and/or that of its subsidiary, and (b) one of its competitors, Experian Plc, had previously suffered an unauthorized release of data as a result of a breach in its security.

48. Equifax knew or should have known of the vulnerability in the open-source Apache Struts framework it used to build its web applications months before the data breach.

49. Equifax knew or should have known that there were patches available to users of Struts to eliminate the vulnerability months before the data breach.

50. Equifax represented to the public, including Class members, that absent their consent even "neighbors, friends, co-workers or family members" could not access Equifax's credit report.

51. In its privacy policy, Equifax represented that:

We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers. We also protect the sensitive information about businesses. Safeguarding the privacy and security of information, both online and offline is a top priority for Equifax.

10

52. In its privacy policy, Equifax defined "Personally identifiable information" and included information such as

- First and last name (middle initial and suffix, as applicable);
- Social Security number;
- Date of birth;
- Gender;
- Home telephone number;
- E-mail address;
- Current and former mailing address;
- Credit card number and expiration date; and
- Driver's license number, state of issue and address on license.

53. The Equifax online privacy policy states that it "applies to all information we receive online from you and about you in connection with an online transaction or request."

54. In its privacy policy, Equifax represented regarding its security and confidentiality policies and practices that it "recognizes the importance of secure online transactions, and we maintain physical, administrative, and technical safeguards to protect your *personally identifiable information*, your *business organization identifiable information*, and the other information we collect about you, as described above." (emphasis in the original).[2]

55. Equifax further represented about the security and confidentiality of the PII it maintains that:

> We safeguard the privacy of information you provide us through online forms. For online requests and Personal Solutions product orders and service requests, we use programs that encrypt the information you provide on the form before transmission to Equifax. Information you provide to us online, including *personally identifiable information* and *business organization identifiable information*, is transmitted to us through a secured socket layer (SSL) transmission. The information is decrypted only upon receipt by Equifax.
>
> Except as stated in the "To Whom We Disclose The Information We Collect" section above, we restrict access to *personally identifiable information* and *business organization identifiable information* that is collected about you to only those who have a need to know that information in connection with the purposes for which it is collected and used.

---

[2] Unless otherwise indicated, all emphases are original.

> Additionally, we have security protocols and measures in place to protect the *personally identifiable information, business organization identifiable information* and other information we maintain about you from unauthorized access or alteration. These measures include internal and external firewalls, physical security and technological security measures, and encryption of certain data. When personally identifiable information is disposed of, it is disposed of in a secure manner.

56. Despite its representations and its duty to maintain PII in a secure manner, Equifax failed to properly protect Plaintiffs' and the Class' PII and through its actions and omissions allowed the data breach to occur, did not patch the vulnerability in the open-source Apache Struts framework it used to build its web applications, did not notice its occurrence for months after its inception, and failed to promptly notify Plaintiffs' and the Class that it had occurred.

57. As a result, Plaintiffs and the Class will now for years suffer the significant and concrete risk that their PII will be (or already has been) misappropriated.

58. Plaintiffs and the Class will or have incurred expenses and loss of their time and resources in having to protect against or remedy the use of their PPI by unauthorized persons.

59. Plaintiffs and the Class have further suffered a diminution in the value of their PPI – a form of intangible property that Plaintiffs and the Class entrusted to Equifax.

60. Plaintiffs and the Class should not be made to bear the expenses caused by Equifax's failure to safeguard their PPI.

61. Equifax's actions and failures to act have caused Plaintiffs and the Class damage, including but not limited to, theft of their PII, the risk of harm to their credit and finances and identity theft, and costs incurred to try to monitor, prevent, and repair the harm caused by the release of their PII.

## FIRST CLAIM FOR RELIEF:
## NEGLIGENCE
## (ASSERTED ON BEHALF OF THE NATIONAL CLASS)

62. Plaintiffs repeat and reallege paragraphs 1-61 as if fully set forth herein.

63. Equifax had a duty to protect and safeguard Plaintiffs and the Class' PII, to detect promptly incursions to the systems containing the PII it maintained, and to notify affected persons in a reasonable manner.

64. Equifax acknowledged these duties in its representations concerning the importance of protecting PII, the harm that could be caused by its release, and the privacy, security, and confidentiality it provided regarding PII.

65. Equifax was aware of the likelihood of an attempted breach of its data and the need to properly secure its systems as a result of, among other things, a previous unauthorized release of W-2 information as a result of a website incursion and of a breach to the data of one of its competitors, Experian Plc.

66. Equifax knew or should have known that its computer systems and data security practices were not adequate to safeguard Plaintiffs' and the Class' PII and to prevent incursion into its systems.

67. Equifax knew or should have known months before the data breach that there was a vulnerability in the open-source Apache Struts framework it used to build its web applications and that there were patches available to fix the vulnerability.

68. Despite its duty, Equifax negligently failed to fix its web applications' vulnerability, protect and safeguard Plaintiffs and the Class' PII, to detect promptly incursions to the PII it maintained, and to notify affected persons in a reasonable manner.

13

69. As a result of Equifax's negligence, Plaintiffs and the Class have been injured in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF:
## BREACH OF CONTRACT/BREACH OF DUTY OF GOOD FAITH
## (ASSERTED ON BEHALF OF THE NATIONAL CLASS)

70. Plaintiffs repeat and reallege paragraphs 1-61 as if fully set forth herein.

71. Plaintiffs and the Class entered into contracts with Equifax, whereby Equifax agreed to protect from unauthorized disclosure PII it received from Plaintiffs and the Class or about Plaintiffs and the Class.

72. Equifax breached its contracts with Plaintiffs and the Class and its implied duty of good faith and fair dealing by failing to protect the PII and by permitting the data breach to occur.

73. As a result of Equifax's breach of contract, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF:
## NEW YORK GENERAL BUSINESS LAW § 349
## (ASSERTED ON BEHALF OF THE NEW YORK SUB-CLASS)

74. Plaintiffs repeat and reallege paragraphs 1-61 as if fully set forth herein.

75. The wrongful acts of Equifax affected millions of consumers and were consumer oriented.

76. Plaintiffs and the other members of the New York Sub-Class are consumers.

77. Equifax has been conducting business in New York State for over 40 years and furnishes services to businesses and consumers in this State on an ongoing basis.

78. Equifax's statements and representations concerning its data protection and its policies regarding privacy, confidentiality, and security referred to herein were misleading and deceptive.

79. Equifax knew or should have known that its systems and security practices were inadequate to safeguard PII, but misleadingly and deceptively represented the security of its systems.

80. Equifax knew or should have known of the need to patch its website vulnerability but failed to act reasonably in doing so, thereby jeopardizing the PII of all persons for whom it retained PII, while continuing to misleadingly and deceptively represent the security and confidentiality of its systems.

81. Equifax's failure to disclose the data breach despite its knowledge of the breach was misleading and deceptive.

82. By reason of the foregoing wrongful acts, Equifax has violated New York General Business Law § 349.

83. Equifax knowingly and willfully violated General Business Law § 349.

84. Plaintiffs and other members of the New York Sub-Class have been, are, and will be in the future damaged by the unlawful acts under they are awarded the relief requested herein.

85. Plaintiffs and other members of the New York Sub-Class have no adequate remedy at law to prevent further loss of PII and misuse of the PII that was released by Equifax as part of the data breach.

86. Pursuant to New York General Business Law § 349(h),

> any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an

15

amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

87. By reason of the foregoing violation of New York General Business Law § 349, Plaintiffs have been damaged in an amount to be proven at trial or are entitled to statutory damages.

88. By reason of the foregoing violation of New York General Business Law § 349, Plaintiffs are entitled to an injunction against Equifax compelling it to (a) use proper security methods, practices, and policies in handling consumer PII and detecting incursion into systems containing PII, including but not limited to repairing the flaw in the open-source Apache Struts framework used in its web applications, (b) disclose to the affected New York Sub-Class members the particular PII disclosed by the data breach, and (c) promptly disclose any incursion to the PII maintained by it.

### FOURTH CLAIM FOR RELIEF:
### NEW YORK GENERAL BUSINESS LAW § 350
### (ASSERTED ON BEHALF OF THE NEW YORK SUB-CLASS)

89. Plaintiffs repeat and reallege paragraphs 1-61 as if fully set forth herein.

90. Equifax's statements and representations concerning the importance of data protection and its policies regarding privacy, confidentiality, and security referred to herein were advertisements subject to the provisions of New York General Business Law § 350.

91. Equifax's advertisements concerning its data protection and its policies regarding privacy, confidentiality, and security referred to herein were misleading and deceptive.

92. Pursuant to New York General Business Law § 350-e,

Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such

16

actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

93. Equifax knowingly and willfully violated General Business Law § 350.

94. By reason of the foregoing violation of New York General Business Law § 350, Plaintiffs have been damaged in an amount to be proven at trial or are entitled to statutory damages.

95. By reason of the foregoing violation of New York General Business Law § 350, Plaintiffs are entitled to an injunction against Equifax compelling it to (a) use proper security methods, practices, and policies in handling consumer PII and detecting incursion into systems containing PII, including but not limited to repairing the flaw in the open-source Apache Struts framework used in its web applications, (b) cease its misleading advertising regarding data protection and its policies regarding privacy, confidentiality, and security, (c) disclose to the affected New York Sub-Class members the particular PII disclosed by the data breach, and (d) promptly disclose any incursion to the PII maintained by it.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Class, respectfully request that the Court enter judgment in favor of them against Equifax and grant them the following relief:

A. An order certifying this action as a class action on behalf of the National Class and the Sub-Class as previously defined in this Complaint;

B. An order appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

C. An award to Plaintiffs and the Class of all damages permitted by law including but not limited to compensatory damages, statutory damages, pre-judgment interest, post-judgment interest;

D. An award to Plaintiffs and the Class of their reasonable attorneys' fees, costs and expenses, in accordance with applicable law;

E. An injunction compelling it to (a) use proper security methods, practices, and policies in handling consumer PII and detecting incursion into systems containing PII, including but not limited to repairing the flaw in the open-source Apache Struts framework used in its web applications, (b) cease its misleading advertising regarding data protection and its policies regarding privacy, confidentiality, and security, (c) disclose to the affected New York Sub-Class members the particular PII disclosed by the data breach, and (d) promptly disclose any incursion to the PII maintained by it; and

F. For such other and further relief as to this Court seems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues.

Dated: New York, New York
September 18, 2017

TRIEF & OLK

by: *[signature]*
Ted Trief
Shelly L. Friedland
Stan Gutgarts
150 East 58th Street, 34th Floor
New York New York 10155
(212) 486-6060
Attorneys for Plaintiffs
ttrief@triefandolk.com

18

sfriedland@triefandolk.com
sgutgarts@triefandolk.com